320-0008 Richard Giroux-Appelee v. Board of Trustees of the Braidwood Police Pension Fund Appellants Thank you. There you are, right side up Mr. Piles. Good morning, or good afternoon. Mr. Atwell, you can start as soon as you're ready. Thank you, your honors. Council, this matter involves the manifest weight standard of review, providing that if there's any competent evidence in the record to support the board's decision, it must be sustained. The plaintiff in this matter, of course, carries the burden of proof. There's two statutes that are involved. One statute under the pension code is 3114.2, that is non-duty disability. The other is 3115, which deals with physician certification. I'll get into a little bit later on the substance of those statutes. However, at the start, I would say that those statutes have no ambiguity. They are very clear as far as what the legislative intent is and the elements which must be proved. The facts, preliminary facts in this case, I will not go into detail except to point out a couple of the paramount concerns. And that is, this was a contract for service as chief of police for a four-year contract, starting on April 28, 2011, and ending on April 28 of 2015. Prior to hire as chief of police for the city of Braidwood, the plaintiff in this matter served as a Will County deputy sheriff police officer for Will County for 22 years, was a member of an IMRF retirement pension. On October 14, 2010, while at Will County, his then-treating physician, Dr. Drelski, certified him physically disabled to perform services as a police officer. When he was at Will County, he sustained numerous injuries, and he incurred numerous surgeries, and many of the body parts, in fact, all of the body parts alleged in the application in this matter were involved as far as injuries during his time at Will County. He filed his application on April 21, 2015. That was one week prior to the time his contract ended with the city of Braidwood. This is a little bit unusual in this case, and that is because this is a contract for services which existed for four years, as opposed to a general employment that usually the police officer has some discretion as to when he or she will retire. While at Will County, he was awarded a disability, I should strike that, he was provided a workers' compensation settlement representing 42% loss of the lower left extremity, permanent disability. Dr. Drelski had set what his restrictions were at that time prior to his hire at Braidwood. Those restrictions were he could not run, he could not jump, he could not squat, he could not rotate, he could not climb, etc. On the date he filed the application, the board had found in this matter that the date that he filed his application on April 21, 2015, and the date that his contract expired the week after, he continued to perform full service, and that there was no disability which suspended or retired him from service. The statutes, I'll touch on, please. 114.2, which is a non-duty disability, provides in part as follows, the police officer found to be physically or mentally disabled so as to render necessary suspension or retirement from police service. Both of those elements, disability and to render necessary suspension or retirement from service, are crucial, and they are both required in this particular matter. Section 3-115, physician certificate, provides as follows, a disability pension shall not be paid unless there is filed with the board certificates of disability by three physicians. That statute does not provide that a disability shall be paid if certified. It says it shall not be paid unless certified. But the legislature in its wisdom also provided in that statute another section, and that is the board may require other evidence of disability. And that's precisely what the board did. I cited the McKee versus Champaign cases touching on that particular issue. So let's look at that other evidence, the testimony at hearing. Plaintiff testified, when hired as a chief of police, as a veteran police officer, you know what your duties are. He was asked to clarify that statement. He says it requires apprehensions, negotiating stares, all the general duties required of a police officer. These are the very same duties that his doctor certified he could not perform. He testified, I had never been declared disabled even when I left Will County. He repeatedly denied any knowledge of his own treating physician's medical report of October 14, 2010. Even though said medical was generated by his attorney's request and was the catalyst for providing the workers' compensation settlement of 42% permanent loss of his leg. He next testifies that I left Will County for political reasons. We look at Dr. Monaco's records, June 30, 2015, two months after the employment contract expired. The doctor states in his records, his contract was not renewed. There was an election. He was planning on leaving anyway, but again, his contract was not renewed. The doctor continues, and this is important. He performed full unrestricted duty until laid off on April 28, 2015. That's the date his contract expired. He testified, I could have been declared, I could have been discharged, that is, when Bill Rulon, newly elected mayor, took over, but he reappointed me. That was at the time about when his contract was expiring. Said he was reappointed. Dr. Cullen's letters, pain management, state on May 6, 2015, one week after the term expired. Since the last visit, patient has retired from chief of police last week. That's April 28, 2015. June 3, retired, planning on travel, working around the house. August 5, 2015, same thing. We go back to July 16 of 2014 in his notes. He states he is planning on retiring in nine months. We look at the board's physicians. Those physicians were not provided with an adequate history by the applicant. He provided to those physicians that his duties were far greater than what he was able to do. When asked by Dr. Gantz, are you required to perform police duties? He says, yes, he wasn't. He knew what his duties were when he was hired. He knew what he could and could not do. He says to Dr. Samo, he tells him that he had no problems with lower left extremity prior to the occurrences at work. Dr. Samo says the records say otherwise. I submit that the physician's reports of 2017 are not necessarily representative of 2015 at the time his contract ended. And I don't believe that there's really anything in the physician's records that indicate that this gentleman was in fact disabled to the extent that he was not performing full service at the time the contract had entered. The circuit court indicated in its order that the court relied or that the board that is relied entirely on credibility issues as far as the plaintiff. There is no question the board did rely to a great extent on that. But those credibility issues go directly to the heart of this matter. That is the elements that have to be proved. What has to be proved here is that this gentleman was in fact disabled. And prior to the time that his contract expired, he was not providing full service for the department. That has not been proven. He has not shown that. It has not been represented by his burden of proof in this particular case. The board submits that his ability to perform was no less diminished at the time his contract expired than have existed at the time he was hired. We look at the records of Dr. Walsh of 2009, August 23. Dr. Walsh says with respect to this knee and leg, lower extremity, he had knee pain, popping, snapping, locking. He can't walk 50 feet. Actually, he had a full knee replacement during the time that he was hired as chief of police, which actually resolved to an extent his function and reduced his pain to an extent. The board submits in this particular case that the only event which served to suspend his employment was the event of the contract expiring on April 28, 2015. There was no disability which suspended or caused his retirement in this particular matter. And the board is respectfully asking this court to sustain the board's decision and hold. Thank you. Thank you, Mr. Atwell. Any questions? No. No. Mr. Piles. Good morning. Good. Good afternoon. Good morning. May it please the court. Counsel. My name is Scott piles and I represent the Eppley Richard Girard. I'm going to dispute a lot of counsel's factual statements. You know, our position is that the trial court's ruling should be affirmed in finding that the board's decision was against the manifest way to the evidence. Uh, if you look at the board's decision, uh, the entire decision cherry picks isolated events in attempt to weave together a scenario where somehow Mr. Girard was not disabled. First, I want to talk about the contract. It's irrelevant as to whether when his employment was going to end. If you look at the roads case that was cited, uh, that case, you know, in a similar situation, a police chief who had suffered a disability filed his application within a couple of days of when he was, his term was going to end. And the court upheld the, uh, the, the off duty, uh, disability on that case. So I think that that argument, uh, is not relevant further. The sites that the board uses to show that Mr. Girard continued to work. Uh, the sites do not support that. Uh, there's questions about what he was or was on vacation. Did he take the rest of his vacation time? I don't know, but there's no evidence that he continued to perform police duties after he filed his application. It's not in the record and it's the board relying on that. They made that argument, both the trial court and here that the record sites do not support that proposition. Also missing from the board's evaluation and neutral impartial decision in this case is the fact that if you review what the evidence that's looked at on the board decision, you're not going to find any reference to the fact that each of the board physicians examined. Mr. Girard reviewed the several hundred pages of medical records and all came to the conclusion that Mr. Girard was in fact disabled. Uh, counsel for the board points out that those exams were done two years, uh, after he filed his application. It's not Mr. Girard. It's not the one that set the timing of those, uh, of those exams that was done by the board. And I think for, uh, counsel for the board to argue that that's somehow his circumstances have changed and that the examinations are, are entitled to less weight. I think that that argument should be disregarded. Further, the board's decision also, uh, doesn't really look at the fact. And I think the trial court pointed this out. Uh, the board's decision picks out isolated instances of pieces of the record. Uh, but mentioned for fails to mention the ultimate conclusions that are drawn. For example, counsel for the board referenced a report by Dr. Walsh about Mr. Girard's physical condition before he was hired as the chief of police and Braidwood. Uh, what Mr. Atwell does not mention to you is that Mr or Dr. Walsh in that report returned Mr. Girard to full duty. He didn't have a disability. That was the finding of Dr. Walsh and, you know, board attorney uses that somehow to show that he was unable to perform his duties. But Dr. Walsh in his report at the end says, well, I did an exam and he, he can go back to being a work at a, as a deputy sheriff. And again, the report of Dr. Dworsky and the report of Dr. Walsh, those were done, uh, within the context of his worker's compensation case. Uh, I would point out that the board and his decision relies heavily on Dr. Dworsky, a letter to me, what states that he cannot go resume his duties as a patrol officer for the Will County Sheriff's department. I would point out that that letter was written in October of 2010. It was several months before he was hired at Braidwood and he continued to treat with his physicians and his condition improved. Uh, I would note, uh, the trial court did a very thorough examination, including making a chart of all of the different, uh, instances where, uh, events occurred within this timeline. And it shows that between the time that, uh, he saw Dr. Dworsky in October of 2010, there's not a lot of treatment from the time that he was hired at Braidwood in April, 2011. Council makes a lot of noise about the fact that Mr. Girat only had to perform administrative duties. Missing from the board's decision is a testimony of Sergeant King, who stated that Mr. Girat backed up, backed him up on traffic calls when he was working, uh, sometimes, uh, assisted in executing search warrants. And was doing police duties. Now, Mr. Atwell will point out that the job description that was put into evidence indicated that the chief's primary duty is administrative functions. However, as the trial court noted, and I think, as I noted, there's still a requirement for the police chief to be physically fit. Each of the board physicians found that Mr. Girat was not able to perform the duties of police chief. In fact, the board council took a second bite of the apple from two of the, uh, board physicians to try to get them to change their opinion on the disability. And they refused. The trial court made note of that as well. Frankly, I think that the trial court was corrected. All of the evidence that's in this case shows that, uh, that former chief Girat was disabled at the time that he's filed his application in April of 2015. I think it's also important to note, you know, that there was also a lot of medical treatment, uh, that was involved after chief Girat took over his duties at Braidwood. Uh, when he was hired in Braidwood in 2011, uh, he had only at that point had a partial left knee replacement. In January of 2012, as a trial court points out, he had a total left knee replacement and that the doctors following that knee replacement, they all opined that he, uh, was diagnosed and suffered from complex regional pain syndrome. And that was first diagnosed, I believe in the fall of 2012. That diagnosis continued to be the case throughout all the medical records. Uh, again, council for the board in his brief pointed out that, you know, that the three physicians opinions showing that Mr. Girat was disabled at the time of his application is not dispositive that the board can ask for other evidence to be presented. And I would submit that the, uh, claimant, Mr. Girat did submit other evidence. We submitted hundreds of pages of treating physicians, records, additional medical reports, sworn testimony from two witnesses. In addition to the three board physicians that found Mr. Girat to be disabled. And that's really the only question. The only, the only real question here is, was Mr. Girat disabled at the time, uh, when he filed his application requiring a suspension of service, the other requirements or the other things that are needed, whether he was a police officer, whether it was a member of the fund, those are not disputed. He wasn't, he was a police officer and he was a member of the fund and there was no discussion, at least at the hearing about other jobs that may have been available in the police department. Council for the board also makes reference to the contract that it was going to end. Uh, council board council, however, doesn't point out that that contract also says that his term may have expanded or extended from time to time. Given if Mr. Girat's physical condition had not been in the condition that he was in. I think it, I think the evidence, it's an open question of whether or not Mr. Girat would have continued beyond that four year term. It's certainly not an evidence and it's certainly not in the record. Mr. At will makes points, uh, about some of the statements made to some of the treating physicians about whether Mr. Girat retired or was working. And I think that those should be taken for what they're worth. Their statements to a treating doctor when he, when the doctor comes in and ask them, well, what's going on. And the patient gives them the history and then the doctor summarizes what he thinks he heard. I don't think that those should be determinative and use as evidence to state that Mr. Girat continued to work in that last week before he, after he filed his application. I think the board's decision is against the manifest way to the evidence. And I think that the trial court, uh, frankly, who took a look at the evidence and the board's decision reached the same conclusion. And I would suggest that the trial court's 14 page order in this case, which involved a thorough review of the medical records, including the creation of a timeline. Uh, I, I think was, uh, was correct and showed that the board's decision was not, did not have a substantial foundation. And I make these two final points. First, the board's finding that the applicant was in the same condition that he was when he was hired in 2011. When he filed his application in 2015, that certainly is against the manifest way to the evidence because number one, Mr. Girat, after he was hired under wet, a complete left knee replacement, all of the doctors and all of the medical records that are in the record in this case, all show. And opine that subsequent to that knee replacement that Mr. Girat suffered complex regional pain syndrome that required an extensive use of, uh, opioid medications and painkillers and additional treatments. The records are replete with Mr. Girat attempting to alleviate that was pain stimulators, additional surgeries, and so forth. I was just at Mr. Girat's physical condition, uh, continued to deteriorate after he had his left knee replacement. One other little fact, if you look at the testimony of Mr. Girat, even towards the end of his term as police chief, he brought back in a deputy chief to assist because he was unable to keep up his duties. That testimony is contained in the redirect of Mr. Girat is in the record. He brought back his jeopardy chief from the man's units. He brought him back from the field to come back into the department to assist. I think that's just one more piece of evidence to show that Mr. Girat was having trouble keeping up with his duties as police chief for the city of Braidwood as a result of his deteriorating medical condition. And I'm not even referencing the two incidents that he had while he was at Braidwood where he fell and he required a shoulder surgery and some of the other difficulties he had as well. I'm just going with the fact that as a trial court did that, it's very simple. He had a left knee replacement after he was hired, and then he developed the complex regional pain syndrome that deteriorated his condition until he had to file in April of 2015. The, the board's decision. Almost appears as if it's he's that they're advocating a particular side in the record at page 168 169 during the cross exam of Mr. Girat by the board council. I make an objection that it almost appears that before the, while the hearing was going on that board council was advocating a position before the board had made this decision in the case. I made an objection to that. And there was a discussion about that. I would suggest to you that the decision in this case is advocating a position that Mr. Girat was not disabled. It was not a decision of a neutral fact finder that examined all of the evidence and made an impartial decision as to whether or not Mr. Girat made, uh, whether or not he met the requirements to be disabled under the pension code. I would suggest that they were advocating a position instead, and it's very clear that there's not really a discussion of the evidence in the board decision because you'll find no reference to the conclusions of the board examinations all finding that Mr. Girat was disabled. If you look at the board decision, they don't talk about it. Now board council here tries to minimize their impact, but these are the board physicians that were selected by the board. The board physicians conducted their examinations they reviewed all of the treating records of Mr Girat. And they came to the conclusion he was disabled. Now, board council says that well these opinions are not accurate because Mr Girat gave an inaccurate just job description of his duties. And I would submit to you that as one of the board physicians stated, Braidwood is a small town and has a small police department. And that if a police chief, if there's a situation that arises and the chief is on duty and bodies are needed the chief is going to need to go out and need to back up the officers. That's what Mr Girat testifying to. I think that's his obligation as a police officer to back up his fellow officers in his department. And to suggest that he was just tied to a desk and only had administrative duties in a small town like Braidwood. I don't think is realistic and I think it's contrary to the evidence in the case. Yes. Pardon. Your time is up. Oh, I'm sorry. The light is on a different screen from my phone so I didn't see it. I can only see Justice Holdridge and board council. Thank you. The court affirmed the trial court in this matter. Thank you. Thank you, Mr. Piles. Mr. Atwell. Any rebuttal. Yes, just a few comments. I'm not going to beat this to death as far as what I've already stated, but a couple of comments that council raised. I'd submit that it's a burden of proof of the applicant to show not the board that he did not continue in full service for the department and the board found otherwise in that particular case that he did. He did have the full knee replacement. His doctor back in 2009, Dr. Drowski said that was inevitable and probably would relieve some of his issues. In fact, it did relieve some of his issues. It relieves some of the. It relieves some of the enabled him to be a bit more functional than what he was before. Now, there was some discussion on this too, as far as the physicians and that it was up to the board as far as to obtain those medical record or those medical reports prior to the 2017 several comments were made. I would only submit that I don't believe some of these things were addressed during the administrative process. And of course, if they are not raised in the administrative process, they're waived on review. Obviously, if some of those things are raised during the administrative process, the board would address those issues. But with that being said, a board has to have a full complement of all medical records of the of the applicant before a physician on an IME will even review review those. With that being said, I again get back to the point that this gentleman knew exactly what his abilities were at the time that he was hired to suggest that his duties were something in extensive than administrative job defies logic. He knew that his restrictions were permanent. His doctor said that they were permanent. He could not be a police officer anymore. So the board submits in this particular case that the statute very clearly requires. You have to establish a disability, but you also have to establish that you were disabled and that that disability suspended you or retired you from service, not that the contractor retired you, but that the disability debt. If he worked to the end of that contract and was not disabled before from performing full service continued in for service. He's not he's not does not qualify for entitlement under 114.2. It's as simple as that. The board determined that the evidence in this case was very competent and compelling and determined that he did not establish his burden of proof under the statute as required. He filed his application. The board is not the board is not arguing for a moment that you can't file an application for disability merely hours before you're terminated. But you have to show you're disabled, you have to show that you didn't perform full service. That was not done. He worked full duty until the end of his contract. He talks about whether he was rehired. Let me ask, what's, what about the deputy chief that was brought in toward the end. I don't believe that the record established that your honor that as far as from that standpoint to assist him on his duties, and I believe that the clear evidence in the record, including his, including his testimony that was contrary to the, to the record establishes the fact that he did continue in full service, especially when you look at all the medical reports. Where his doctors actually stated that he worked until the end of his term. Thank you. Surely, so to finish up on this particular matter, the board feels it's very clear that what this gentleman he knew that he would not qualify for another pension benefit. He knew that with a four year term, he couldn't qualify. The only way to do that is through disability. So he filed his application, he continued to work full duty during that time. And the board submits again that it was not a disability, which rendered necessary his suspension or retirement from service. It was the end of his contract. And his contract was not renewed, and he knew it would not be. Thank you and we are asking that this court sustain the board's decision and whole. Thank you, Mr. Atwell. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision. The court will stand in brief recess until 1.30.